**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

*United States of America v. Dwight Williams*
3:14-cr-00049-TMB

By:            THE HONORABLE TIMOTHY M. BURGESS

PROCEEDINGS:     ORDER FROM CHAMBERS

This matter comes before the Court regarding Defendant Dwight Williams' Motion for Compassionate Release pursuant to 18 U.S.C. 3582(c) (the "Motion").[1] Williams, age 60, argues in the Motion that extraordinary and compelling reasons justify a reduction in his sentence, including his "deteriorating eyesight."[2] Williams is legally blind, with "retinal scarring" and "age-related cataracts in both eyes."[3] His Bureau of Prisons ("BOP") medical records indicate that eyeglasses no longer improve his eyesight.[4] He notes that surgery is typically recommended for cataracts, but that "it is unknown whether [he] will undergo surgery for his condition, or when the procedure will be performed."[5]

The U.S. Probation Office ("USPO") noted special concern for Williams' vision issues while in custody, particularly his need for cataract surgery.[6] USPO observed that at the time of filing, Williams had been referred for cataract surgery[7] but "it is unknown if a cataract surgery has been scheduled or completed."[8] USPO recommended that this Court obtain a "current status update of the defendant's eye surgery" to determine whether Williams has "obtained the needed cataract surgery" or has a surgery scheduled within a reasonable amount of time.[9]

The Government opposed the Motion, arguing that Williams' self-reported vision issue regarding the inadequacy of eyeglasses "fails to prove Williams cannot care for himself [in] custody at any materially different level than he could care for himself out of custody."[10] Initially, the Government did not address the issue of Williams' cataracts or surgery.[11]

---

[1] Dkts. 281 (*Pro Se* Motion), 294 (Counsel's Supplement in Support of Motion).
[2] Dkt. 294 at 4.
[3] *Id.*
[4] *Id.* (citing Dkt. 295 (Medical Record) at 3).
[5] *Id.*
[6] Dkt. 298 (USPO Memorandum) at 3.
[7] *See* Dkt. 295 (Sealed Notice of Filing Exhibit D-1) at 4, 18 (indicating at an optometry exam in May 2023 that "[r]eferral for cataract surgery will be submitted").
[8] Dkt. 298.
[9] *Id.*
[10] Dkt. 299 (Government Opposition) at 9.
[11] *Id.* (absence).

Considering USPO's concern with Williams' needed cataract surgery, this Court ordered a status update from BOP indicating whether Williams' medically necessary eye surgery had already been performed, and if not, whether a date certain had been set for the surgery.[12] The Government provided Williams' BOP medical records indicating that Williams had received a preoperative consult, but that no date certain had been established.[13] The Government explained that scheduling Williams' cataract surgery required first the BOP medical director's approval and then submission to NaphCare, BOP's outside scheduling provider, for scheduling.[14]

This Court then directed BOP to provide a status update as to the BOP medical director's approval of Williams' medically necessary cataract surgery.[15] The Government's response indicated that the BOP medical director had approved Williams' surgery and that the approval had been submitted to NaphCare.[16] This Court then directed the Government to provide a status update indicating whether NaphCare had yet scheduled Williams' surgery.[17] The Government responded that Williams' surgery was scheduled with a "hard date" of March 7, 2024, "as it is appropriate (unless the court orders it be changed)."[18]

In light of the foregoing, the **Court sets a Motion Hearing for November 9, 2023 at 9:00 AM in Anchorage Courtroom 1**, and **ORDERS** that the BOP medical provider most familiar with Williams' diagnoses, care, and proposed future care and treatment be present via video or telephone to provide testimony regarding this matter. Further, if Williams has an outside medical provider familiar with his diagnoses, care, and proposed future care and treatment, the Court welcomes this provider's presence via video or telephone.

At the Motion Hearing, the BOP medical provider most familiar with Williams' diagnoses, care, and proposed future care and treatment shall address the following questions:

(1) Williams' May 3, 2023 medical records indicate that due to retinal scarring and age-related cataracts, Williams' vision has worsened in both eyes and that glasses no longer improve his sight. His doctor referred him for cataract extraction surgery, with a recommended surgery date of November 3, 2023. After this evaluation, was Williams evaluated for possible surgery by this date? If not, why not? What were the reasons for delay?

(2) A subsequent presurgical consult on September 26, 2023 provided a target surgery date of December 29, 2023. Was Williams evaluated for possible surgery by this date? If not, why not? What were the reasons for delay?

(3) After the BOP medical director's approval was submitted to NaphCare, NaphCare then set a "hard date" for surgery on March 7, 2024. Given Williams' condition, his doctor's

---

[12] Dkt. 301 (Minute Order Requesting Status Update) at 1–2.
[13] Dkt. 302 (Status Report per Docket 301); 303 (Sealed Medical Records).
[14] Dkt. 302 at 2.
[15] Dkt. 305 (Text Order Directing Status Update Regarding Medical Director Approval).
[16] Dkt. 306 (Status Update per Docket 305).
[17] Dkt. 307 (Text Order Directing Status Update Regarding NaphCare Scheduling).
[18] Dkt. 308 (Status Update per Docket 307).

recommendation, and the prior target dates for Williams' surgery (November 3, 2023 and December 29, 2023), why did NaphCare decide to delay the surgery until March 7, 2024?
(4) What detriment, if any, has resulted or may result from waiting until March 2024 to perform Williams' cataract surgery?
(5) What steps has BOP taken to address Williams' significant vision deficits and to ensure his safety during the repeated delays in scheduling the medically necessary surgery?

Further, Williams' counsel shall address the following questions:

(1) Does Williams have an outside medical provider who has reviewed his BOP medical records and has an opinion on his care and treatment?
(2) Does Williams' release plan include a plan for treating his cataracts?
(3) What will early release accomplish if Williams does not get the medically necessary cataract surgery? Will Williams be able to schedule and undergo surgery outside BOP custody?

Entered at the direction of the Honorable Timothy M. Burgess, United States District Judge.

DATE: November 2, 2023.